**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

─────────────────────────────

**KRISTINA L.H.,**

                          **Plaintiff,**                          **22-CV-605Sr**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                          **Defendant.**

─────────────────────────────

<u>**DECISION AND ORDER**</u>

As set forth In the Standing Order of the Court regarding Social Security

Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have

consented to the assignment of this case to the undersigned to conduct all

proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).

Dkt. #13.

**BACKGROUND**

Plaintiff applied for supplemental security income ("SSI"), benefits with the

Social Security Administration ("SSA"), on July 9, 2015, at the age of 18, alleging

disability beginning January 1, 2003, due to a severe learning disability and Von

Willebrand disease. Dkt. #6, p.92. On February 22, 2018, plaintiff appeared with her

parents at an administrative hearing before Administrative Law Judge ("ALJ"), Stephen

Cordovani and was advised of her right to representation. Dkt. #6, pp.75-89. On June

11, 2018, plaintiff appeared with counsel before ALJ Cordovani and testified at an

administrative hearing, along with an impartial  vocational expert ("VE"), Eric Dennison. Dkt. #6, pp.43-74. Plaintiff testified that she resided in her childhood home with her stay-at-home mom and daughter, who was 18 months old. Dkt. #6, p.48. Plaintiff testified that she helped her mother with cleaning and, sometimes, cooking. Dkt. #6, pp.48-49. She does laundry and cares for her daughter. Dkt. #6, p.67. Plaintiff accompanies her mother to the grocery store. Dkt. #6, p.49. Her mother drove her to the hearing; plaintiff does not have a driver's license. Dkt. #6, p.49.

Plaintiff testified that she was in high school classes with 15 other students and that she had bad anxiety when she worked in groups. Dkt. #6, pp.50-51. Her mother helped her with the disability application because plaintiff had a hard time understanding some of the questions. Dkt. #6, p.51. Plaintiff started to see a counselor because her depression and anxiety was really bad. Dkt. #6, p.53. She becomes overwhelmed easily and is unable to be around strangers. Dkt. #6, pp.56-57. When she goes to a restaurant, her mother interacts with the servers. Dkt. #6, p.57. She is able to walk a couple of blocks to the 7-11 or Dash's grocery store. Dkt. #6, p.58. She goes to the Galleria Mall every couple of months to walk around with a friend or two. Dkt. #6, p.66. She had recently interviewed for a job at Chucky Cheese, but they never called back. Dkt. #6, p.61. She thought she might be able to work at a job where she was working by herself. Dkt. #6, p.63.

When asked to assume an individual with plaintiff's age, education and past work experience with no exertional limits who was limited to simple and routine

instructions and tasks with no supervisory duties, independent decision making or strict production quotas, with minimal changes in work routine and processes and no more than frequent interaction with supervisors and no more than incidental interaction with coworkers and the general public, the VE testified that plaintiff could work as a cleaner or box bender, each of which were medium exertion, unskilled positions, or as a bagger, which was a light exertion, unskilled position. Dkt #6, pp.69-70. The VE further opined that if such individual was off task more than 10% of the work day or absent more than once per month, that individual would be deemed unemployable. Dkt. #6, pp.71-72.

ALJ Cordovani rendered a decision that plaintiff was not disabled on July 18, 2018 and the Appeals Council denied review on March 2, 2019. Dkt. #6, pp.7 & 21-35. Plaintiff commenced an action in this Court on May 1, 2019. 19-CV-563. By Stipulation and Order for Remand dated August 7, 2020, the matter was remanded to the Commission for further proceedings. 19-CV-563 at Dkt. #12. The Appeals Council directed further development of the record regarding plaintiff's mental health treatment and further evaluation of the opinion of plaintiff's primary care physician, Carol Lang, M.D. Dkt. #6, p.682.

On February 23, 2022, plaintiff appeared with counsel and testified, along with VE Lousi Laplante, at an administrative hearing conducted telephonically before ALJ Cordovani. Dkt. #6, pp.613-647. Plaintiff testified that she and her 5 year-old daughter moved back home with her father more than two years ago. Dkt. #6, p.623.

She sees her two year-old son for a couple of hours almost every weekend. Dkt. #6, p.624. Plaintiff does not have a driver's license. Dkt. #6, p.625. Her father goes to the grocery store for her because she has anxiety when she is out in public. Dkt. #6, p. 625. She explained that she gets nauseous, shaky and dizzy when she is anxious. Dkt. #6, pp.628 & 635. Plaintiff has never had a full-time job, but when she was a teenager, she used to help her mother at her business. Dkt. #6, pp.634-635. She experiences flashbacks from her PTSD which happen randomly. Dkt. #6, p.637.

When asked to assume an individual with plaintiff's age, education and past work experience with no exertional limits who was limited to simple and routine instructions and tasks who could maintain attention and concentration for unskilled work tasks and could work in a low-stress work environment with no supervisory duties, independent decision-making or strict production quotas with no more than minimal changes in work routine and processes and no team or tandem work with only occasional contact with the public, coworkers and supervisors, and only occasional decision-making and changes in the workplace, the VE testified that plaintiff could work as a warehouse worker, which is a medium exertion, unskilled position, or as a housekeeper cleaner or marker, each of which are light exertion, uskilled positions. Dkt. #6, p.644. The VE further opined that if such individual was off task more than 10% of the work day or absent more than once per month, that individual would be deemed unemployable. Dkt. #6, p.645.

The ALJ rendered a decision that plaintiff was not disabled on April 11, 2022. Dkt. #6, pp.585-606. Plaintiff commenced this action seeking review of the Commissioner's final decision on August 9, 2022. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning

of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient Residual Functional Capacity ("RFC"), for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that she could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 416.920(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since the date of her application on July 9, 2015; (2) plaintiff's borderline intellectual function, Von Willebrand disease, anxiety disorder, stress reaction disorder, depressive disorder, mild obsessive compulsive disorder and post-traumatic stress disorder ("PTSD"), constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform work at all exertional levels and can understand, remember and carry out simple and routine

instructions and tasks, can maintain attention and concentration for unskilled, routine work, is able to work in a low stress work environment with no supervisory duties, strict production quotas or independent decision-making, with minimal changes in work routine and processes, and occasional interaction with supervisors, co-workers and the general public and with no team or tandem work; and (5) plaintiff was capable of working as a warehouse worker, which is a medium exertion, unskilled position or as a housekeeper cleaner or marker, which are light exertion, unskilled positions, and was not, therefore, disabled within the meaning of the SSA. Dkt. #6, pp.585-606.

Plaintiff argues that the ALJ erred in affording less weight to the more limiting opinions of plaintiff's treating providers and that it was error to use plaintiff's reported activities of daily living to undermine their opinions. Dkt. #9-1, pp.12-20. Plaintiff argues that there is no basis to believe that her activities of daily living support a determination that she could engage in substantial gainful activity or that her activities of daily living conflict with her treating provider's opinion with respect to plaintiff's limitations. Dkt. #9-1, p.15. Plaintiff also argues that the ALJ failed to reconcile his determination regarding plaintiff's RFC with the opinion of the consultative examiner, Dr. Ippolito, that plaintiff would have a moderate limitation in her ability to regulate emotions, control behavior and maintain well-being and that it is unclear from the the ALJ's decision whether his RFC  accounted for plaintiff's moderate limitation in regulating emotions, controlling behavior and maintaining well-being. . Dkt. #9-1, pp.20-24.

The Commissioner argues that the ALJ properly weighed the opinion evidence and that it is permissible to consider plaintiff's activities of daily living in assessing RFC. Dkt. #10-1, pp.5-12. The Commissioner also argues that the ALJ's RFC determination is consistent with Dr. Ippolito's opinion that plaintiff had moderate limitations in her ability to regulate emotions, control behavior and maintain well being. Dkt. #10-1, pp.12-13. As a result, the Commissioner argues that the RFC is supported by substantial evidence. Dkt. #10-1, p.13.

For claims filed before March 27, 2017, the SSA regulations provide that, unless the ALJ affords controlling weight to a treating source's medical opinion, the ALJ is required to consider and weigh all medical opinions of record, whether those opinions are from acceptable medical sources, other medical sources or non medical sources, with consideration of the following factors for determining the appropriate weight to afford such opinions: (1) the frequency of examination; (2) the length, nature and extent of the treatment relationship; (3) the evidence in support of the medical opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) other factors brought to the SSA's attention that tend to support or contradict the opinion. *Saxon v. Astrue*, 781 F. Supp.2d 92, 103-04 (N.D.N.Y. 2011); *See* 20 C.F.R. § 404.1527 (f)(2). The factors to be considered in evaluating opinions from non-treating medical sources are the same as those for assessing treating sources, except that consideration of the treatment relationship is replaced with consideration of whether the non-treating source examined the plaintiff. *White v. Saul*, 414 F. Supp.3d 377, 383 (W.D.N.Y. 2019). So long as the ALJ's rationale is clear, however, the ALJ

need not address each factor individually. *See. Atwater v. Astrue*, 512 Fed. App'x 67, 70 (2d Cir. 2013).

Genuine conflicts in the medical evidence are for the ALJ to resolve. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). Even where the ALJ's determination does not perfectly correspond with any of the opinions of medical sources cited in a decision, the ALJ is entitled to weigh all of the evidence available to make a residual functional capacity finding that is consistent with the record as a whole. *Trepanier v. Comm'r of Soc. Sec.*, 752 Fed. App'x 75, 79 (2d Cir. 2018); *Matta v. Astrue*, 508 Fed. App'x 53, 56 (2d Cir. 2013). An ALJ need not reconcile every conflict in the record, but must set forth the crucial factors in his determination with sufficient specificity to enable a reviewing court to decide whether the determination is supported by substantial evidence. *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).  While the ALJ is not obligated to explicitly reconcile every conflicting shred of medical evidence, the ALJ cannot selectively choose evidence in the record to support the ALJ's  conclusions. *Gecevic v. Sec. of Health & Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y. 1995). A plaintiff is entitled to understand why the ALJ chose to disregard portions of medical opinions that were beneficial to his application for benefits. *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp.2d 288, 297 (W.D.N.Y. 2006). Thus, when an ALJ chooses to adopt only portions of a medical opinion, the ALJ must explain his decision to reject the remaining portions. *Tanya Y. v. Comm'r of Soc. Sec.*, 20-CV-712, 2022 WL 1115458, at *2 (W.D.N.Y. Apr. 14, 2022).

On September 14, 2015, plaintiff's school psychologist advised the New York State Office of Temporary and Disability Assistance that plaintiff would

> require support and guidance in most areas of self-help. Occupational, emotional, housing and financial guidance will be required. She has limited skills and needs monitoring and oversight for most of her personal care.

Dkt. #6, p.298. Plaintiff was in a 15:1 special education class Skills and Achievement Commencement Credential ("SACC"). Dkt. #6, p.284. Her Full Scale IQ on the Wechsler Intelligence Scale for Children - IV was assessed to be 70 on March 6, 2012 and 71 on April 24, 2015. Dkt. #6, pp.293 & 302. "As measured on the Woodcock-Johnson III Test of Achievement," plaintiff's "overall level of achievement is very low." Dkt. #6, p.286.

Christine Ransom, Ph.D., conducted a consultative psychological evaluation and intellectual evaluation of plaintiff on October 30, 2015. Dkt. #6, pp.421-424 & pp.425-428. Plaintiff's mother advised that plaintiff occasionally has panic attacks when she is out in public alone and exhibits some obsessive-compulsive behaviors that do not disrupt her functioning. Dkt. #6, p.425. Plaintiff's mother opined that these conditions were mild and did not need treatment. Dkt. #6, p.426. Plaintiff was observed to have a mildly tense affect during the evaluation with adequate language skills to complete the evaluation without difficulty. Dkt. #6, p.426. She was able to count backwards from 20, do simple calculations, and remember 3/3 objects immediately and after 5 minutes. Dkt. #6, p.427. The intellectual evaluation yielded a Full Scale IQ of 72, placing plaintiff in the borderline range. Dkt. #6, pp.421-424. Dr. Ransom opined that plaintiff

> can dress, bathe and groom herself. She is learning how to
> do shopping on her own. She can do cooking, cleaning and
> laundry. She has not yet learned how to manage money but
> probably is capable of doing so with paper, pencil and
> calculator. She has not yet learned how to drive but is starting
> to practice. She socializes mostly with family. She is step by
> step learning to be more independent and go places alone.
> She has a variety of hobbies and interests. She likes bowling.
> Adaptive functioning appears to be commensurate with
> borderline intellectual capacity.

Dkt. #6, p.427. Dr. Ransom opined that plaintiff would have mild difficulty following and

understanding simple directions and instruction, performing simple tasks independently,

maintaining attention and concentration for simple tasks, maintaining a simple regular

schedule, learning simple new tasks, performing complex tasks, relating adequately with

others and appropriately dealing with stress. Dkt. #6, p.423. Dr. Ransom opined that

plaintiff's areas of difficulty are secondary to panic disorder, currently mild, and

obsessive compulsive disorder, currently mild. Dkt. #6, p.423. Dr. Ransom opined that

the "results of the evaluation are consistent with the absence of a cognitive deficit and

the presence of mild psychiatric conditions which will not significantly interfere with the

[plaintiff']s ability to function on a daily basis." Dkt. #6, p.424. The ALJ afforded Dr.

Ransom's opinion some weight, noting that although she is an acceptable medical

source with knowledge of SSA regulations and a specialty in psychology, she based her

opinion upon one examination. Dkt. #6, p.601. However, the ALJ determined that the

totality of the evidence supported somewhat greater limitations than found by Dr.

Ransom. Dkt. #6, p.601.

Carol Lang, M.D., completed a Mental Residual Functional Capacity Assessment on September 11, 2017, indicating that plaintiff was markedly limited in her ability to maintain attention and concentration for extended periods and to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances and moderately limited in her ability to remember work-like procedures and to understand, remember, and carry out very short and simple instructions. Dkt. #6, pp.431-432. However, the ALJ afforded Dr. Lang's opinions little weight because her specialty was internal medicine and she only treated plaintiff for five months. Dkt. #6, p.602. The ALJ also noted that Dr. Lang's contemporaneous reports failed to document any mental status examination findings that support her opinion, which were not consistent with plaintiff's reported activities of daily living. Dkt. #6, p.602. Medical records indicate that plaintiff presented with nausea and vomiting on August 10, 2017, symptoms which Dr. Lang determined were stress-related and subsequently reported that the Ativan prescribed to her made plaintiff's depression worse. Dkt. #6, p.455. Dr. Lang noted that plaintiff didn't admit to being depressed during the previous visit, but questioned whether "that might have been due to her learning disability." Dkt. #6, p.455. Dr. Lang prescribed an anti-depressant and counseled plaintiff to use the Ativan only as needed for anxiety, noting that plaintiff had been taking it three times daily and was sleeping all the time. Dkt. #6, p.455. On September 6, 2017, plaintiff reported that she was feeling much better on her anti-depressant and that her gastrointestinal symptoms had resolved. Dkt. #6, p.452. On October 30, 2017, however, plaintiff was basically non-communicative during her appointment with Dr. Lang, with plaintiff's mother reporting that plaintiff had stopped taking her anti-depressant, prompting Dr.

Lang to advise plaintiff to seek counseling. Dkt.#6, p.449. The ALJ determined that Dr.
Ippolito's more recent opinion as to the plaintiff's mental functioning was more consistent
and entitled to greater weight than Dr. Lang's opinion. Dkt. #6, p.602.

On June 1, 2018, Tracey E. Pay, LCSW-R, with Western New York
Psychotherapy Services, completed a Mental Residual Functional Capacity
questionnaire. Dkt. #6, pp.575-579. LCSW-R Pay stated that she provided counseling to
plaintiff every two weeks beginning February 8, 2018. Dkt. #6, p.575. LCSW-R Pay
indicated that plaintiff experienced generalized persistent anxiety and recurrent and
intrusive recollections of a traumatic experience, which are a source of marked distress.
Dkt. #6, p.576.  She diagnosed plaintiff with a depression disorder and learning
disability. Dkt. #6, p.575. LCSW-R Pay opined that plaintiff would be unable to meet
competitive standards for remembering work-like procedures; would be seriously limited
in her ability to work in coordination with or proximity to others without being unduly
distracted, accept instructions and respond appropriately to criticism from supervisors,
and respond appropriately to changes in a routine setting. Dkt. #6, p.577. LCSW-R Pay
explained that plaintiff "has history of anxiety and poor focus when around groups of
people - this negatively affects her ability to focus and remember tasks." Dkt. #6, p.577.

The ALJ also considered a letter from LCSW-R Pay dated June 9, 2018,
indicating that she had been providing plaintiff with outpatient mental health therapy on a
bi-weekly basis since February 8, 2018. Dkt. #6, p.810. LCSW-R Pay stated that plaintiff
was diagnosed with depressive disorder and post-traumatic stress disorder and had

reported a learning disability. Dkt,#6, p.810. She noted that plaintiff

> has a history of involvement in multiple abusive relationships
> and endured a very severe, life threatening attack in front of
> her parents home. At the time of her evaluation, her
> presenting symptoms included anxiety, tearfulness,
> excessive sleep, poor motivation and flashbacks. [Plaintiff]
> presented as alert, pleasant, easy to engage, eye contact
> good, oriented x3, mood/affect was depressed, tearful. Her
> insight/judgment was partial.

Dkt. #6, p.810. LCSW-R May stated that plaintiff had been prescribed an anti-

depressant and although "[h]er mood and overall daily functioning has improved . . . she

continues to struggle with anxiety, sporadic flashbacks, and poor focus." Dkt. #6, p.810.

Progress notes from February 22, 2018 indicate that plaintiff presented

with chronic depression and daily flashbacks pertaining to assault by ex-boyfriend over

two years ago. Dkt. #6, p.820. On March 21, 2018, although her mood was depressed,

plaintiff reported "improved motivation, energy and sleep is not excessive; flashbacks

have lessened and she was experiencing less anxiety. Dkt. #6, p.818. On April 13, 2018,

plaintiff reported that her medication is effective and LCSW-R Pay "noticed considerable

positive change in mood as does [plaintiff]." Dkt. #6, p.815. On May 7, 2018, LCSW-R

Pay noted that plaintiff was "demonstrating good insight and judgment as a parent" and

reported "very few flashbacks about past abuse" with "no episodes of crying or feeling

down, depressed." Dkt. #6, p.813. Although LCSW-R Pay observed that plaintiff's mood

and affect were brighter, she also noted plaintiff's anxiety was heightened. Dkt. #6,

p.813. On May 15, 2018, plaintiff reported "fleeting flashbacks about past abuse" but

denied any depression or panic. Dkt. #6, p.812. Progress notes from June 1, 2018

indicate that plaintiff reported having anxiety about current matters pertaining to her ex-boyfriend, fleeting PTSD symptoms, and sporadic family matters. Dkt. #6, p.811. On June 13, 2018, progress notes indicate that plaintiff was distraught because her boyfriend had broken up with her unexpectedly. Dkt. #6, p.809. On July 18, 2018, they discussed plaintiff's anxiety over the father of her child stalking her. Dkt. #6, p.807. It was noted on August 15, 2018 that plaintiff had obtained a restraining order against the boyfriend. Dkt. #6, p.806. On September 12, 2018, plaintiff denied any PTSD symptoms and reported that she was doing well. Dkt. #6, p.805. On September 26, 2018, she "denied having any anxiety, depression or PTSD and sleep is good." Dkt. #6, p.803. On October 10, 2018, plaintiff reported that she was pregnant. Dkt. #6, p.804. LCSW-R Pay did not treat plaintiff after October 10, 2018. Dkt. #6, p.836.

The ALJ afforded LCSW-R Pay's opinion partial weight, noting that although she was plaintiff's treating therapist, she was considered an other source, and "the degree of absences and severe limitations are not supported by the [plaintiff]s endorsed activity level including child care activity, travel to mall and movies, completion of household chores, and taking public transportation, and accordingly such aspects of the opinion are given little weight, however, the balance of the report to the extent supporting moderate limitations set forth in the above-delineated residual functional capacity have been granted more weight." Dkt. #6, p.603. Pursuant to the regulations applicable at the time plaintiff filed her claim, social workers are not acceptable medical sources. *Susan B. v. Comm'r of Soc. Sec.*, 551 F. Supp.3d 107, 114 (W.D.N.Y. 2021). Nevertheless, evidence from "other sources" such as social workers, should be

considered with respect to important issues such as the severity of an impairment and any related functional effects. *Id.* It is within the ALJ's discretion to determine the appropriate weight to accord the opinion of other source's based upon all the evidence. *Id.*

Janine D. Ippolito, Psy.D., conducted a consultative psychiatric evaluation of plaintiff on July 6, 2021. Dkt. #6, pp.828-831. Dr. Ippolito noted that plaintiff was driven to the evaluation by her mother, who accompanied her throughout the evaluation. Dkt. #6, p.828. Plaintiff reported feeling anxious, and her affect was noted to be dysphoric. Dkt. #6, pp.829-830. Plaintiff's attention and concentration were observed to be impaired due to suspected learning problems; she was able to do the counting and 1-step calculation without errors, but had difficulty with the 2-step calculation and serial subtraction tasks. Dkt. #6, p.830. Her recent and remote memory skills were also observed to be impaired due to suspected learning problems; she was able to recall 3/3 objects immediately and after a delay and state 4 numbers forward and 3 numbers backward. Dkt. #6, p.830. Dr. Ippolito estimated that plaintiff's intellectual functioning was below average to borderline with a somewhat limited general fund of information. Dkt. #6, p.830. Plaintiff's insight and judgment were described as fair. Dkt. #6, p.830. Dr. Ippolito opined that plaintiff would be

> able to understand, remember or apply simple directions and instructions, use reason and judgment to make work-related decisions, sustain an ordinary routine and regular attendance at work and maintain personal hygiene and appropriate attire with no evidence of limitations. She can sustain concentration and perform a task at a consistent pace and demonstrate awareness of normal hazards and take appropriate

> precautions with mild limitations. She can understand,
> remember or apply complex directions and instructions,
> interact adequately with supervisors, co-workers and the
> public and regulate emotions, control behavior and maintain
> well-being with moderate limitations. These limitations are
> due to her emotional distress and suspected cognitive
> deficits.

Dkt. #6, p.830. The ALJ afforded Dr. Ippolito's opinion significant weight because she is

an acceptable medical source with knowledge of SSA regulations and a medical

specialty in psychology who personally examined the plaintiff within the relevant period

and whose opinion was supported by plaintiff's activity level and the overall record. Dkt.

#6, p.604.

The ALJ also considered a Mental Residual Functional Capacity

Assessment completed by Alexandria Sloan, NP and Alli May, Associate Counselor, on

January 21, 2022. Dkt. #6, p.842-845. They explained that due to symptoms of PTSD,

tasks involving memory and concentration are impaired and that additional symptoms of

irritability and panic attacks may interfere in social exchanges and increase in frequency

and duration under stress. Dkt. #6, p.843. They indicated that plaintiff would be unable

to meet competitive standards in the following areas: maintain attention for a two hour

segment; maintain regular attendance and be punctual within customary tolerances;

work in coordination with or proximity to others without being unduly distracted; accept

instructions and respond appropriately to criticism from supervisors; and respond

appropriately to changes in a routine work setting. Dkt. #6, p.843. They also indicated

that plaintiff would be seriously limited, which was defined as frequently less than

satisfactory in any work setting, in the following areas: remember work-like procedures,

sustain an ordinary routine without special supervision, make simple work-related decisions, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, be aware of normal hazards and take appropriate precautions, and maintain socially appropriate behavior. Dkt. #6, p.843. In their opinion, plaintiff would be absent more than four days per month as a result of her impairments or treatment. Dkt. #6, p.845.

The ALJ afforded this opinion little weight because neither provider was an acceptable medical source. Dkt. #6, p.604. As an "other source," nurse practitioners, similar to social workers, should be considered with respect to important issues such as the severity of an impairment and any related functional effects, but are not entitled to controlling weight. *Dorothy B. v. Comm'r of Soc. Sec.*, 692 F. Supp.3d 55, 66 (W.D.N.Y. 2023). Furthermore, the ALJ explained that

> while NP Sloan did see the [plaintiff] on November 25, 2020, the mental status examination at the time revealed no abnormalities, as was the case with the visit on October 27, 2020. Indeed, the mental status report most contemporaneous with the opinion appears on January 7, 2020 [which] is completely normal aside from depressed mood. As such, the actual treatment findings on the [plaintiff's] mental status examinations contained in the Horizon records do not in any way support the extreme limits identified in the opinion, which in any event is belied by the [plaintiff's] activity level, including primary care giver for her five year[-]old, remembers her appointments, is able to do light cooking, cleaning, laundry, grocery shopping, showering, bathing and dressing independently, uses public transportation, socializes, watches TV, goes camping and has gone to restaurants, movies at the Galleria Mall and other public activities.

Dkt. #6, p.604.

Treatment records indicate that plaintiff sought out mental health treatment due to increased depression symptoms and anxiety leaving the house, with her PHQ-9 indicating moderate depression and her GAD-7 indicating moderate anxiety on October 27, 2020. Dkt. #6, pp.874, 881 & 894.  On November 25, 2020, plaintiff reported that she sleeps most of the day, is anxious when she leaves the house and relies upon her parents for help because she is unable to raise her children. Dkt. #6, p.847. On December 8, 2021, plaintiff reported that her depression and anxiety were high due to a recent breakup and the loss of her mom and that she had been having flashbacks of the night she broke up with her boyfriend and he pulled a knife on her, prompting an increase in her anti-depressant medication. Dkt. #6, p.860. She continued to report that she felt "depressed, anxious, stays home, isolates, hypersomnia, low energy, and low motivation," prompting another increase in her anti-depressant dosage on January 7, 2022. Dkt. #6, p.860.

As the foregoing exhaustive recital of evidence demonstrates, the ALJ appropriately addressed opinions from multiple treating providers and consultative examiners and provided sufficient explanation of his reasons for accepting certain opinions and rejecting others. Contrary to plaintiff's argument, the limitations identified by Dr. Ippolito were incorporated into the ALJ's RFC. *See Koza v. Comm'r of Soc. Sec*., 692 F. Supp.3d 197, 204-205 (S.D.N.Y. 2023) (moderate limitation in regulating emotions, controlling behavior and maintaining well being properly accounted for by providing "only occasional contact with the pubic, co-worker and supervisors."); *Jacqueline L. v. Comm'r of Soc. Sec*., 515 F. Supp.3d 2, 12 (W.D.N.Y. 2021) (RFC

limiting plaintiff to occasional interaction with supervisors, coworkers and the general public, as well as low stress work, sufficiently accounts for a moderate limitation in regulating emotions). Similarly, there is significant case law indicating that a moderate limitation in ability to sustain an ordinary routine and attendance can be addressed with an RFC that limits a plaintiff to simple, routine tasks. *Koza*, 692 F. Supp.3d at 205. Finally, while it is true that the capability to perform activities of daily living is not inherently inconsistent with a finding of disability, the law is clear that an ALJ may consider a plaintiff's purported activities of daily living for purposes of a credibility determination. *Christina J. v. Comm'r of Soc. Sec*., 695 F. Supp.3d 357, 364 (W.D.N.Y. 2023). In the instant case, the ALJ did not rely solely on his assessment of plaintiff's activities of daily living in rendering his determination, but properly considered those activities in addition to the medical treatment records, plaintiff's testimony, and the medical opinion evidence. *See Regina M. v. Comm'r of Soc. Sec*., 23-CV-6629, 2025 WL 899008, at *6 (W.D.N.Y. March 25, 2025).

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #9), is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #10), is granted.

The Clerk of the Court is directed to close this case.


**SO ORDERED.**


**DATED:**     **Buffalo, New York**
                **March 31, 2025**


                           **s/ H. Kenneth Schroeder, Jr.**
                          **H. KENNETH SCHROEDER, JR.**
                          **United States Magistrate Judge**